TRUSTEES OF THE FIRST CONGREGATIONAL CHURCH AND SOCIETY OF OSHKOSH, Appellant, vs. THE MILWAUKEE & LAKE WINNEBAGO RAILROAD COMPANY, Respondent.

*May 21 — June 21, 1890.*

RAILROADS: CONDEMNATION OF LAND. (*1*) *Petition by owner: Pleading: Burden of proof.* (*2–4*) *What constitutes taking? Track constructed on further side of street: Filling of street: Erection of gates.*

1. Whether the railroad company should file an answer to a petition for the appointment of commissioners to appraise the damages for an alleged taking of land, and whether, in the absence of any answer, the burden is upon the petitioner to establish the facts alleged, not determined.
2. The owner of property on one side of a street is not entitled to compensation by reason of the building of a railroad track along the other side of the street, wholly beyond the center line thereof, where such track was legally built prior to the enactment of ch. 255, Laws of 1889; and, where the city makes no complaint, such owner cannot claim compensation under that statute on the ground that the track was not legally built because not located in the center of the street, as required by a city ordinance.
3. A slight filling of gravel on the street, to restore it to its former usefulness and to enable vehicles more conveniently to pass over the track into an alley, does not entitle such owner to compensation.
4. The erection and maintenance of gates or barriers in a street at a railroad crossing, pursuant to a municipal ordinance requiring the same for the safety of the public, is not such a taking of land as will entitle the owners of abutting lots to compensation.

APPEAL from the Circuit Court for *Winnebago* County.

The appeal is from an order dismissing a petition for the appointment of commissioners to appraise the damages for the taking of certain lands by the railroad company. The petition, which was duly verified, alleges that the plaintiff is the owner of a lot in the city of Oshkosh, fronting upon Bond street on the east and upon Algoma street upon the north, upon which is located its church building; that the defendant company has built a railroad along said Bond street and across Algoma street, and in building the same has raised its track higher than the grade of the street and has built an embankment on the part of Bond street owned by the plaintiff, being a part of its said lot; that the defendant, in building said railroad, has also dug, excavated, and carried away a large quantity of the earth composing said lot in Bond street and Algoma street, and placed upon said lot superstructures which are a constituent part of said railroad, and which the defendant is under legal obligation to maintain permanently on said lot as a part of said railroad, and which it does now maintain; that all of the acts and things done by the defendant as aforesaid were necessitated by the construction of its railroad; that the plaintiff's lot has been greatly damaged by the construction of said railroad, and by the acts and things done by the defendant thereon, and by the passage of trains over said streets, and by smoke, jarring, and noise from the engines, and has been rendered much less valuable; that the defendant has omitted and refuses to prosecute proceedings for the condemnation of the plaintiff's interest in said streets and for the assessment of its damages; and that the defendant has not acquired title to the plaintiff's land or the right to enter thereon and to maintain thereon the said railroad or any part thereof or the said embankment or superstructures, and has not paid the damages sustained by the plaintiff thereby.

The defendant did not serve or file any answer to the

petition. Upon the hearing the plaintiff claimed that the facts stated in the petition, not having been denied, were to be considered as established, and that the burden of disproving them was upon the defendant. The circuit court held that the burden was upon the plaintiff to make out a *prima facie* case, and the plaintiff introduced his evidence accordingly. The facts shown by the evidence on the hearing will sufficiently appear from the opinion.

*H. B. Jackson*, for the appellant, contended, *inter alia*, that the trial court erred in holding that the burden of proof was upon the plaintiff, notwithstanding the defendant omitted to take issue on said petition either by answer or affidavit. Lewis, Em. Dom. sec. 390; *Aurora & C. R. Co. v. Miller*, 56 Ind. 88; *Tracy v. E., L. & B. S. R. Co.* 80 Ky. 259; *In re St. Paul & N. P. R. Co.* 34 Minn. 227; *In re Lockport & B. R. Co.* 77 N. Y. 557; *In re New York, L. & W. R. Co.* 35 Hun, 220; *S. C.* 99 N. Y. 12; *South Carolina R. Co. v. Blake*, 9 Rich. (S. C.), 228; *Wis. Cent. R. Co. v. Cornell University*, 49 Wis. 162; *S. C.* 52 id. 537–541; *In re New York Cent. R. Co.* 66 N. Y. 407; *Shealy v. C., M. & N. R. Co.* 72 Wis. 471. The proofs showed a "physical interference" by the railroad company with the plaintiff's land, by the placing of an embankment thereon for the purpose of restoring the street. They showed also an invasion by the company, and the digging and carrying away of the soil which was a part of the plaintiff's land, and the erection and maintenance of permanent structures thereon. The presumption from the ordinance introduced in evidence by the defendant, and which provides that the location of the railroad shall be along the "center line of Bond street," is that the *right of way* is along such center line, even though the *track itself* is to the east thereof. If such presumption does not arise then the railroad was not legally built, and the plaintiff can avail itself of ch. 255, Laws of 1889.

*Charles W. Felker*, for the respondent.

COLE, C. J.   Since, upon the merits, we think no case was made for the appointment of commissioners to appraise damages to the petitioner's property, we shall not decide the question of practice, as to whether or not an answer should have been filed to the petition so as to form an issue for trial.   As a matter of fact, the parties went to a hearing and took testimony as though the statements in the petition had been formally denied; and, as we have intimated, we think the proof showed no taking of the property for which damages should be assessed.

It appears from the petition and proofs that the lot in question is situated on the west side of Bond street, fronts on Algoma street on the north, and is bounded on the south by an alley.   Bond street is seventy feet wide, and the railroad track is laid in that street, a number of feet east of the center line thereof.   That is to say, at the southern boundary of petitioner's lot, where the railroad track intersects the line drawn east and west through the center of the alley, it is more than sixteen feet east from the center of Bond street, and, at the point where the railroad track intersects the center line of Algoma street, it is more than ten feet east of the center of Bond street.   So it appears that the entire railroad track is located quite a distance from the petitioner's lot, and it does not appear that any of its land has been either actually or constructively taken for the use of the corporation.   Nor do we think the proof shows any such interference or invasion of the petitioner's lot as entitles it to compensation under the decisions of this court; for the rule here is well settled that there must be some actual, physical interference with or taking of the property for which damages are given.   *Heiss v. M. & L. W. R. Co.* 69 Wis. 555, and cases cited in the opinion.

But it is claimed that an embankment was made on the petitioner's lot in the street, so as to bring the case within the rule of *Buchner v. C., M. & N. W. R. Co.* 56 Wis. 403, and 60 Wis.

Trustees vs. The Milwaukee & Lake Winnebago R. Co.

264, and *Shealy v. C., M. & N. R. Co.* 72 Wis. 471. There was no excavation of the street in this case, as in those cases; but the evidence does show that about six inches of gravel was placed in Bond street west of the track on a line with the alley, so as to enable teams with wagons more conveniently to pass over the track into the alley than they otherwise could do without such filling. The top of the west iron rail was seven tenths of a foot higher than the street surface. The track was planked between the rails, and this gravel was put in west of the rail, sloping to the sidewalk, so as to make a proper passage-way. This filling became necessary, in fact, to restore the street at that point to its former condition of usefulness, but it affords no ground for complaint by the owner of the lot. The facts present a case so unlike those to which we have just referred that no comment is required to mark the distinction between them.

But it is further claimed that there was a taking of a part of petitioner's lot in Algoma street for the purpose of constructing and maintaining thereon, by the railroad company, their gates and barriers for the safety of persons traveling on the street. These gates were four in number. Two were on the east side, and two on the west side, of Bond street, and were connected by rods running underground through boxes, and are raised and lowered by means of a crank at a gate-house on the east side of Bond street. These gates were built pursuant to an ordinance of the common council requiring the company, at railroad crossings, to erect and maintain such barriers for the safety of the public. The gates are constructed in the usual way, and are not, strictly speaking, a part of the necessary appliances for operating a railroad, though they are very essential for the protection of the public, and are maintained at the expense of the corporation. But still, requiring the railroad corporation to construct them would seem to be a proper exercise of the police power to guard against acci-

dents from collision; and we have no doubt but the common council might compel them to be erected by the corporation, or might have erected them at the expense of the city itself. Now, suppose the city had put up these gates, would it have been liable to make compensation to the petitioner, as an abutting lot-owner, because it had placed them at the corner of the streets? It seems to us it would not be bound to make compensation in the case supposed, nor do we think they constitute any ground for assessing damages against the railroad corporation for the slight inconvenience which their maintenance and repairs may occasion the petitioner. Such safety gates would seem to be very advantageous and desirable for the protection of persons and carriages which would usually congregate at that crossing on Sundays, and, instead of being regarded as detrimental to the church property, appear to be highly necessary and requisite for its use and enjoyment. At all events, by the corporation placing them at the corners of the streets in obedience to the ordinance of the city, no such burden is imposed as will entitle an abutting lot-owner to damages. It seems to us to be a very wise and proper exercise of the police power vested in the municipal authorities to require them to be erected for the safety of the lives and property of citizens.

But it is further contended that the petitioner is entitled to have damages assessed under ch. 255, Laws of 1889. That act, in effect, provides that abutting owners of land on a highway, street, or alley heretofore or hereafter laid out or used as such shall have a common right in the full and unobstructed use of such highway, street, or alley to the extent of its full width, and no corporation shall use or obstruct any such highway, street, or alley, or any part thereof, so as to materially interfere with its usefulness as a highway, or so as to injure or damage property abutting thereon on either side, or authorize or permit the same to

be done, without due compensation being made for any damage resulting therefrom to the owners of property on both sides of that part of such highway, street, or alley so closed up, used, or obstructed: provided, however, that the act shall not be so construed as to require payment of damages to property on both sides of any street, highway, or alley arising from the construction, use, or operation hereafter of any railroad track heretofore legally laid out or established in such street or alley. We cannot see what aid this law affords the petitioner's case. The proviso expressly excludes the payment of damages to property on both sides of a street arising from the operation of a railroad track heretofore *legally built.* This railroad track was laid along Bond street in 1882, and the safety gates in Algoma street were built in 1885. But it is said by the petitioner's counsel that the track was not legally laid, because it was not placed in the center of Bond street, as the ordinance of the city on the subject required. But the city makes no complaint that the track was laid out of the center of that street. Besides, the general statute (subd. 5, sec. 1828, R. S.) gave the railroad corporation the right to construct its road across or along any street which its route should intersect, and this would control the ordinance where they came in conflict.

As the gates were built by the direction of the municipal authority under the police power conferred by the charter, and as there was no taking of the petitioner's land other than the erection of these barriers, which does not amount to a taking in the contemplation of the law as expounded by our decisions, the order of the circuit court refusing to appoint commissioners must be affirmed.

*By the Court.*—Order affirmed.