MORE-WAY NORTH CORPORATION, Respondent, v. STATE HIGHWAY COMMISSION, Appellant.*

*No. 134. Argued September 2, 1969.—Decided October 3, 1969.*
(Also reported in 170 N. W. 2d 749.)

* Motion for rehearing denied, without costs, on November 25, 1969.

For the appellant there were briefs by *Robert P. Russell*, corporation counsel of Milwaukee county, and *Joseph*

*J. Esser*, assistant corporation counsel, and oral argument by *Mr. Esser*.

For the respondent there was a brief by *Foley, Sammond & Lardner*, attorneys, and *Eugene C. Daly* of counsel, all of Milwaukee, and oral argument by *Mr. Daly*.

WILKIE, J.   The central issue on this appeal is whether there was a taking of More-Way property for public use entitling More-Way to just compensation under the requirements of the Wisconsin Constitution, which provides, under art. I, sec. 13, as follows:

"The property of no person shall be taken for public use without just compensation therefor."

This constitutional term "just compensation" has never been construed as requiring payment for all injuries imposed upon persons or property by acts of government.[1]

There is a distinction between the power of eminent domain, which is assumed to be concurrent with an obligation to compensate,[2] and the police power, which is assumed to represent the power of government to impose injuries upon property without the payment of compensation.[3] This distinction is the source of much of the confusion permeating the legal rules surrounding condemnation awards.

At the cornerstone of all condemnation proceedings giving rise to a claim for just compensation there must be a taking.

In discussing the constitutional provision requiring compensation for the taking, this court, in *Wisconsin Power & Light Co. v. Columbia County*,[4] said:

---

[1] *See* Crouch, *Valuation Problems Under Eminent Domain*, 1959 Wis. L. Rev. 608.

[2] *Id.* at page 609.

[3] *See Carazalla v. State* (1955), 269 Wis. 593, 70 N. W. 2d 208, 71 N. W. 2d 276; *Stefan Auto Body v. State Highway Comm.* (1963), 21 Wis. 2d 363, 124 N. W. 2d 319.

[4] (1958), 3 Wis. 2d 1, 87 N. W. 2d 279.

". . . mere consequential damage to property resulting from governmental action is not a taking thereof. Sec. 13, art. I, Wis. Const., like its equivalent in the federal constitution, 'does not undertake, . . . to socialize all losses, but only those which result from a taking of property.' *United States v. Willow River Co.,* 324 U. S. 499, 502, 65 Sup. Ct. 761, 89 L. Ed. 1101. Thus impairment of the value of plaintiff's farm by odors from a municipal sewerage-disposal plant is not a taking. *Hasslinger v. Hartland,* 234 Wis. 201, 206, 290 N. W. 647. Nor is partial obstruction of ingress to and egress from plaintiff's property, and the view therefrom, by a municipal shelter a taking of the property. *Randall v. Milwaukee,* 212 Wis. 374, 382, 383, 249 N. W. 73. See also *State ex rel. Saveland P. H. Corp. v. Wieland,* 269 Wis. 262, 267, 69 N. W. 2d 217. In this connection it is important to observe that while the constitutions of many states provide expressly that private property shall not be taken *or damaged* for public use without just compensation (2 Nichols, Eminent Domain (3d ed.), p. 324, sec. 6.44), that of Wisconsin provides only that 'the property of no person shall be *taken* for public use without just compensation therefor' (sec. 13, art. I, Wis. Const.) without mention of damage." [5] (Citations and emphasis in original.)

It is More-Way's position in the instant case that the acquisition by the Highway Commission of a limited highway easement over its land, together with the lowering of the grade of Highway 41, and the resulting necessity to reconstruct and regrade portions of the parking lot, thus causing the alleged loss of 42 parking spaces, was a taking of land within the meaning of the constitutional provisions and within the meaning of sec. 32.09 (6), Stats. Thus, More-Way argues, although there was no taking of land in fee, the Highway Commission should be liable to it for permanently depriving it of a portion of the beneficial use of part of its property, with resulting diminution in the fair market value of its property, computed by the jury as $22,000.

---

[5] *Id.* at page 6.

The record reveals: (1) That the Highway Commission did not obtain title in fee to any part of More-Way's land; (2) that the limited highway easement was used for the purpose of transporting and parking the commission's work vehicles while the regrading was going on and encompassed a strip of More-Way's land with an area of approximately 7,000 (6,784) square feet; (3) that the Highway Commission offered to pay More-Way $400 for such use of its land; (4) that this limited highway easement has since terminated; (5) that in lowering the grade of the highway, More-Way also sloped and removed an unspecified amount of earth from its land [6] but that the actual physical boundaries of More-Way's land were not changed, even though the actual topography was changed; (6) that the actual cost to More-Way to repair and reconstruct the damaged portions of its parking area was approximately $13,000; and (7) that there is a dispute as to whether More-Way actually lost 42 parking spaces, with the Highway Commission contending that since the actual number of spaces existing prior to the reconstruction was not actually determined it is impossible to find that any parking spaces were lost.

The Highway Commission contends that since there was no land lost, no parking spaces could have been lost.

More-Way claims there was a taking since even though no land was taken in fee, More-Way was deprived of the best beneficial use of part of its property by the required sloping off of its parking lot with the resulting alleged loss of 42 parking stalls. On the other hand, the Highway Commission contends that this was not a taking within the meaning of art. I, sec. 13 of the Wisconsin Constitution, or sec. 32.09 (6), Stats.

So the question remains: Was there a taking?

---

[6] The record discloses that certain of the sloping work may have been done by the Highway Commission with accompanying removal of some soil, but there is no contention that this was a taking of land.

This court, in *Colclough v. Milwaukee,*[7] said:

"It was held in *Harrison v. Milwaukee Co.,* 51 Wis. 647, 662, to be the settled law in this state that in the absence of any law giving the owners of real estate adjoining a public street or highway a right to recover damages of the city, village, town, or county in which the same is situated, *on account of the change of the grade of such street or highway,* no damages can be recovered on account of such change, unless the premises of the adjoining or abutting owner have been injured through the negligence of the municipality or its agents in making such change, *and that such change of grade is not, in any case, the taking of private property for public use.*"[8] (Emphasis added.)

Then in *Dahlman v. Milwaukee,*[9] this court said:

". . . The mere changing of the actual surface of a street by a municipal corporation is not a taking of the private property of an adjoining owner for public use, and hence not within the constitutional provision requiring compensation to be made. . . . If such change be made under authority of law and with reasonable skill and care, there is no liability for damages in the absence of an express statute giving damages . . . ."[10]

". . . This court has consistently and frequently held that, in the absence of express statute, a city is not liable for consequential damages to an adjoining property owner resulting from the lawful change of grade of a street, unless the work be negligently done and injury results from such negligence."[11] (Citations omitted.)

Nichols, in his treatise on *Eminent Domain,* has stated that the term "consequential damages" is generally used

[7] (1896), 92 Wis. 182, 65 N. W. 1039.

[8] *Id.* at page 185.

[9] (1907), 131 Wis. 427, 110 N. W. 479, 111 N. W. 675.

[10] *Id.* at page 430.

[11] *Id.* at page 439. Presumably sec. 32.09 (6) (f), Stats., would now provide compensation; however, that statute still requires a taking. *See* footnote 14, *infra,* and accompanying text. *See also* Heaney, *The New Eminent Domain Law and the Wisconsin Practitioner,* 1960 Wis. L. Rev. 430, 435, note 28.

with reference to damages to property, no part of which is appropriated. He further states: [12]

"Under the [constitutional] provision [allowing compensation] for 'taking' only, 'consequential' damages are generally not compensable,[13] since such loss is deemed to be *damnum absque injuria."* [14]

Is there any legislative authorization for More-Way to be compensated in the instant situation by the provisions of sec. 32.09 (6) (f), Stats.? That statute provides:

"(6) In the case of a partial *taking,* the compensation to be paid by the condemnor shall be determined by deducting from the fair market value of the whole property immediately before the date of the evaluation, the fair market value of the remainder immediately after the date of evaluation, assuming the completion of the public improvement and giving effect, without allowance of offset for general benefits, and without restriction because of enumeration but without duplication, to the following items of loss or damage to the property where shown to exist:
"

"(f) Damages to property abutting on a highway right of way due to change of grade *where accompanied by a taking of land."* (Emphasis added.)

Quite clearly these statutory provisions require a taking of land before they become applicable and require compensation.[15] If there is no taking, these statutory provisions do not apply. To be compensated, More-Way must prevail in its contention that there can be a taking even though there is no land taken in fee.

[12] 2 Nichols, *Eminent Domain* (3d ed.), p. 503, sec. 6.4432 (1).

[13] *See* Annot. (1924) 33 A. L. R. 269; *Randall v. Milwaukee* (1933), 212 Wis. 374, 249 N. W. 73.

[14] *See Trustees v. Milwaukee & Lake Winnebago R. R.* (1890); 77 Wis. 158, 45 N. W. 1086.

[15] *But see* sec. 32.18, Stats., which provides for a procedure for recovery of damages for a change of grade which is *not* accompanied by a taking of land. Concededly, More-Way has not attempted compliance with this procedure.

More-Way cites Nichols to support its position. Nichols stated:

"Constitutional rights rest on substance, not on form, and the liability to pay compensation for property taken cannot be evaded by leaving the title in the owner, while depriving him of the beneficial use of the property. It has already been shown that a legal restriction upon the use of land may constitute a taking, although the title is unaffected and the land is physically untouched, and the same is true when the owner's enjoyment of the land is physically interfered with, although his legal rights remain unimpaired. However, just how severe the interference with the owner's enjoyment of his property must be to constitute a taking, and to render a statute authorizing the injury, but providing for no compensation, unconstitutional, is not a question which can be answered in such a way as to furnish a concise rule readily applicable to all cases likely to arise. Each case must be decided on its own merits until, by the gradual process of judicial exclusion and inclusion, it is possible to say on which side of the line any given injury to private property rights may be said to fall. In a general way, however, it may be said that when an interference with the use and enjoyment of land that would be actionable at common law is effected under legal authority and as an incident to the construction of a public improvement, and consists of actual entry upon land and its devotion to public use for more than a momentary period, or of an injury of such a character as substantially to oust the owner from the possession of the land and to deprive him of all beneficial use thereof, there is a taking of property in the constitutional sense, whether there has been any formal condemnation or not.

"In the absence of such ouster or deprivation of *all* beneficial use, the inflicting of injury upon adjacent land by the proper construction and nonnegligent maintenance of a legislatively authorized improvement does not constitute a taking." (Emphasis added.) [16]

This quoted section indicates that Nichols considered only a deprivation of *all* beneficial use to be a taking. In

---

[16] 2 Nichols, *Eminent Domain* (3d ed.), pp. 372, 373, sec. 6.1 (1).

the instant case the same land was available after the regrading as before, the boundaries were not changed. More-Way was not deprived of *all* the beneficial use of its property.

More-Way places great emphasis on the case of *Olen v. Waupaca County.*[17] In that case Waupaca county raised the grade of a county highway by putting in fill of about five feet deep. Olen's property fronted on the highway.

In putting in the fill on the highway the county put about 25 yards of fill on Olen's land with a depth of five feet at the front lot line and sloping downward as the fill extended back 20 feet from the street. The fill on the property covered and prevented the use of the private walk and driveway to the house and garage. The court found "that for at least twenty feet back from the street line, Olen's land was actually covered by the *permanent* sloping embankment supporting the raised grade of the county highway, there was, as a matter of law, a taking of his land and not a merely consequential injury thereto." [18]

From a reading of the *Olen case,* the important and controlling element was the fact that it was a *permanent* embankment that was placed on Olen's land. In the instant case, no permanent physical barrier has been erected on More-Way's property that would prevent More-Way from utilizing the land in the same way it did prior to the regrading.

Two other recent cases decided by this court and relied on by More-Way do not support its position. In *Volbrecht v. State Highway Comm.,*[19] the landowner was compensated where there was an actual taking of land occasioned by a highway cut through a hill. In *Kam-*

---

[17] (1941), 238 Wis. 442, 300 N. W. 178.

[18] *Id.* at page 449. *See also* Heaney, *The New Eminent Domain Law and the Wisconsin Practitioner, supra,* footnote 11.

[19] (1966), 31 Wis. 2d 640, 143 N. W. 2d 429.

*rowski v. State,*[20] the constitutionality of taking a scenic easement was sustained (with compensation). Under that program, permanent restrictions are placed on the use of land. Not so here.

More-Way finally argues that the Highway Commission, since it submitted a jurisdictional offer using language similar to sec. 32.09, Stats., must have concluded that there was a taking of land and should now be estopped from denying that there was a taking.

But the Highway Commission has never taken any step here constituting an admission that there was a taking of land. In offering to pay $9,600 for "damages to property abutting on a highway right of way due to change of grade" the Highway Commission omitted the language in sec. 32.09 (6) (f), Stats., "where accompanied by a taking of land," and its jurisdictional offer of $9,600 is really only a willingness to pay such amount presumably as would be due if a claim were properly filed under sec. 32.18. By this offer it was willing to pay $9,600 notwithstanding there was a failure to timely file a claim under that section. The Highway Commission has always objected to More-Way's claim that the Highway Commission is liable for the alleged diminution in value to More-Way's property. We conclude that there was no taking of More-Way's property and that More-Way is not entitled, under sec. 32.09, to compensation other than the $400 for the limited highway easement. The Highway Commission has already paid More-Way this $400 and $9,600 additional damages for damage caused by the change of grade. More-Way is entitled to the $10,000 which it has already received. In its reply brief, the Highway Commission concedes this and now agrees to pay an additional $3,000, presumably because the cost of

---

[20] (1966), 31 Wis. 2d 256, 142 N. W. 2d 793. *Also see* the second *Kamrowski Case, Kamrowski v. State* (1967), 37 Wis. 2d 195, 155 N. W. 2d 125, in which this court approved the jury's award for the scenic easement.

repairs came to that amount. We remand the case to the trial court for consideration of that question in connection with its revision of the judgment herein.

*By the Court.*—Judgment reversed and cause remanded for further proceedings consistent with this opinion.